UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EARL KEITH HARRIS | CIVIL ACTION |
| VERSUS | NO. 16-16906 |
| JODY BANKS ET AL. | SECTION "J" (2) |

## REPORT AND RECOMMENDATION

Plaintiff, Earl Keith Harris, is a prisoner currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana ("Angola"). He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Jefferson Parish Sheriff's Deputy Jody Banks and Jefferson Parish Sheriff Newell Normand. Harris asserts two claims: first, that while incarcerated in the Jefferson Parish Correctional Center ("JPCC") on November 25, 2015, he was injured when Deputy Banks used excessive force against him during an incident, which also is the basis of his second claim, a false charge of assaulting a police officer, of which he was subsequently acquitted. He seeks $2.5 million in damages. Record Doc. No. 4 (Complaint at ¶ V).

On April 11, 2017, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Daniel Martiny, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## **THE RECORD**

Plaintiff testified that he is currently incarcerated in Angola based upon a conviction on August 29, 2016, for aggravated second degree battery, for which he was sentenced to life in prison. He confirmed that his two claims in this case are based on an incident that occurred while he was incarcerated in JPCC in Gretna, Louisiana, on November 25, 2015.[1]

Harris testified that on that date he was being housed as a pretrial detainee in Cell 12, 3-A-Left, of the JPCC "lockdown tier," a disciplinary unit for inmates who had violated prison disciplinary rules. He stated that his disciplinary infraction had occurred three or four days earlier and was based on Harris threatening to kick a door.

Plaintiff testified that shortly before the incident, deputies had begun to use hand-held cameras to make video and audio recordings of themselves and the inmates as the deputies made some of their rounds. He stated that on November 25th at about 6:50 a.m., Deputy Banks entered the tier to serve subpoenas and Banks asked Sgt. Jefferson to assist him with conducting roll call, overseeing food delivery and checking the cells on the

---

[1] Although the complaint was actually filed in this court on November 25, 2016, one day after expiration of the one-year prescriptive period, in the pro se prisoner context, a "mailbox rule" applies, so that the date when prison officials receive the complaint from the plaintiff for delivery to the court is considered the time of filing for limitations purposes. United States v. Petty, 530 F.3d 361, 363 & n.1 (5th Cir. 2008); Stevenson v. Anderson, 139 F. App'x 603, 604 (5th Cir. 2005); Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998). In this case, Harris signed and dated his complaint on November 21, 2016, which would be the earliest date when he could have delivered it to prison officials for mailing. Record Doc. Nos. 1 and 4 (Deficient Complaint and Complaint at p. 6).

2

disciplinary tier, using a video camera to do so. He said that the inmates, including himself, disagreed with the deputies' use of the camera and daily objected to being videoed while made to stand in front of the camera, but the deputies responded that they had been instructed to do so.

Harris testified that on the date of the incident, when he was ordered to stand in front of the camera, he "made a sweeping motion with my right hand" toward the deputy who was doing the filming in an effort to redirect the camera away from his face. He said Banks was then holding the camera. He acknowledged that he made physical contact with the camera while it was in the hands of Deputy Banks. He said that immediately upon making contact with the camera, Sgt. Jefferson "dove on my back and took me to the ground" and placed himself on Harris's back, with Harris face down on the floor, fully restrained under Jefferson's weight. Harris testified that while he was fully restrained in this position, although Sgt. Jefferson had not yet placed him in handcuffs, Deputy Banks approached and punched Harris "two or three times" in the face and mouth, until Jefferson stopped Banks within a matter of seconds by shouting, "I got him, I got him, put some cuffs on him." Harris said he was then handcuffed and immediately escorted to the medical department.

Harris confirmed that he had filed suit only against Banks, not Jefferson, and he acknowledged that Jefferson's use of force to take him to the ground and restrain him was "understandable" in light of the swipe Harris had taken at the camera. He alleged,

3

however, that Banks's punching him two or three times <u>after</u> Jefferson had already restrained him was excessive force. Asked what injuries he suffered as a result of Banks's actions, Harris testified that he received lacerations to his lip and mouth that did not require stitches and that Banks also broke one of Harris's teeth, which subsequently required that the tooth be extracted. He said he also suffered fractured ribs when Jefferson took him to the ground, but he acknowledged that those injuries did <u>not</u> result from Banks's use of excessive force.

As to his second claim, Harris testified that he was charged both with jail disciplinary infractions and with felony battery of a correctional officer and forcibly resisting arrest based on the incident. He said the criminal charge was tried in the state 24th Judicial District Court in Jefferson Parish on May 16, 2016, and that he was found <u>not</u> guilty of all charges. He testified that an audio/videotape of the incident was played at his criminal trial. As to the jail disciplinary charge, he stated that he was found guilty of an infraction after a disciplinary hearing conducted <u>before</u> his criminal trial at which he was acquitted, and that he was placed in lockdown for 35 days as a penalty. Harris testified that he was given only a limited opportunity to make a statement on his own behalf at the disciplinary hearing and that he was found guilty of the disciplinary violation after Harris was made to "step out" and Banks discussed the incident privately with the hearing officer. He alleged that he "was not given a fair hearing."

Harris testified that Sheriff Normand was not personally involved in the incident and that he named Sheriff Normand as a defendant in this case because Deputy Banks "works under" the Sheriff, who is generally responsible for training and supervising his deputies, and because the Sheriff has overall responsibility for the jail.

After the Spears hearing, the audio/videotape played at the criminal trial was delivered to me, and I viewed it. Record Doc. No. 23. The recording shows Harris forcibly knocking the camera from Banks's hand, at which point the camera stops recording pictures but continues to record sound, which is largely inaudible. In short, the video is wholly inconclusive as to the civil claims asserted in this case.

## ANALYSIS

I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998); Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014). After review in the screening process, the court must "identify cognizable claims or dismiss the complaint" if it or portions of it is frivolous or fails to state a claim upon

5

which relief can be granted. 28 U.S.C. § 1915A(b)(1); Lewis, 589 F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir.

6

1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon additional evidence, as long as it is properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed, in whole or in part, as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question

7

of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's claims against defendant Sheriff Normand only must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. His complaint against Deputy Banks only, as amended by his testimony at the Spears hearing, states cognizable claims against Deputy Banks under the broadest reading,[2] requiring further proceedings.

## II.  EXCESSIVE FORCE

Harris claims that Deputy Banks punched him unnecessarily in the face and mouth after he had been fully restrained by Sgt. Jefferson and that the force was excessive because there was no need to apply any force at that point after Harris had been restrained.

---

[2]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

8

In <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 34 (2010), the United States Supreme Court confirmed that the standards it had established in <u>Hudson v. McMillian</u>, 503 U.S. 1, 4 (1992), remain the law.

> The "core judicial inquiry," we held [in <u>Hudson</u>], was not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 7, 112 S. Ct. 995; <u>see also</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 319-321 . . . (1986). "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident. . . ." <u>Hudson</u>, 503 U.S. at 9 . . . .

However, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." <u>Kingsley v. Hendrickson</u>, 135 S. Ct. 2466, 2472 (2015).

> In deciding whether the force deliberately used is, constitutionally speaking, "excessive," should courts use an objective standard only, or instead a subjective standard that takes into account a defendant's state of mind? It is with respect to <u>this</u> question that we hold that courts must use an objective standard. In short, we agree . . . that **a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable**.
> A court (judge or jury) cannot apply this standard mechanically. . . . Rather, objective reasonableness turns on the "facts and circumstances of each particular case." <u>Graham v. Connor</u>, 490 U.S. 386, 396 . . . (1989). A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. <u>See</u> <u>ibid</u>. A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." <u>Bell v. Wolfish</u>, 441 U.S. 520, 540, 547 . . . (1979).

9

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. See, e.g., Graham, supra, at 396 . . . . We do not consider this list to be exclusive.

Kingsley, 135 S. Ct. at 2472-73 (bold emphasis added).

Federal courts have often found that a prisoner stated a cognizable claim for excessive force based on an officer's use of force after a prisoner has been restrained. See, e.g., Fennell v. Quintela, 393 F. App'x 150, 152, 155 (5th Cir. 2010) (Prison officer allegedly grabbed handcuffed inmate's wrists and twisted them, resulting in injury, while his arms were confined in a cell's food tray slot.); Watts v. Smart, 328 F. App'x 291, 292, 293-94 (5th Cir. 2009) (evidence that defendants struck prisoner without provocation while he was in restraints created genuine fact issues whether force applied was excessive); Morris v. Trevino, 301 F. App'x 310, 313 (5th Cir. 2008) (Prisoner stated a claim for excessive force when he alleged that, despite his lack of provocation, officer twisted his arms into painful positions while his hands were handcuffed behind his back, yanked his hands through the tray slot opening of his cell, beat and punched on his arms, and punched him in the face.).

In this case, Harris's written submissions and testimony, which must be accepted as true for present purposes, allege that the force used by Banks was wholly unnecessary, and therefore excessive, because Harris was fully restrained by Jefferson and order had

thereby been restored. These allegations are initially sufficient to state a claim at this time requiring further proceedings.

## III. FALSE CHARGES

Harris testified that he was charged both with jail disciplinary infractions and with felony battery of a correctional officer and forcibly resisting arrest based on the subject incident. He was found not guilty of the criminal charge. As to the jail disciplinary charge, he stated that he was found guilty of an infraction after a hearing conducted <u>before</u> his criminal trial at which he was acquitted, and that he was placed in lockdown for 35 days as a penalty. To whatever extent, if any, that Harris may be claiming that his constitutional rights were violated based on false or fabricated <u>disciplinary</u> <u>charges</u> resulting in his placement in lockdown, these allegations fail to state a claim of violation of his constitutional rights and must be dismissed.

In <u>Sandin v. Connor</u>, 515 U.S. 472, 481-83 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to his placement in lockdown or other denial of prison privileges as disciplinary punishment begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States." <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983). In <u>Sandin</u>, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . .

11

imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (citations omitted). Thus, in Sandin, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Court held that due process does not require that a prisoner be afforded the procedural mechanisms previously prescribed in Wolff v. McDonnell, 418 U.S. 539 (1974), and Hewitt, 459 U.S. at 460.

In Wolff, the Supreme Court held that because disciplinary proceedings are not part of a criminal prosecution, the prisoner need not be afforded "the full panoply of rights" provided in criminal proceedings. Wolff, 418 U.S. at 556. Nevertheless, the Wolff Court held that prison officials must afford the prisoner some due process in disciplinary proceedings before imposing punishment, including notice of the violation, a hearing and some opportunity to present evidence on the prisoner's behalf. Id.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." Madison, 104 F.3d at 767. "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." Wilkinson v. Austin, 545 U.S. 209, 225 (2005) (citations omitted). The Fifth Circuit held in Madison that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and

12

do not implicate due process concerns." Madison, 104 F.3d at 768; accord Hernandez v. Velasquez, 522 F.3d 556, 563 (5th Cir. 2008); Dixon v. Hastings, 117 F. App'x 371, 372 (5th Cir. 2005); Malchi v. Thaler, 211 F.3d 953, 957-58 (5th Cir. 2000). In Hernandez and Madison, the Fifth Circuit held that such restrictions do not represent the type of atypical, significant deprivation in which a state might create a liberty interest. Hernandez, 522 F.3d at 563; Madison, 104 F.3d at 768. Some examples of prison hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction. Sandin, 515 U.S. at 484.

In the instant case, Harris's testimony and written submissions establish that the action taken against him based upon the allegedly false disciplinary charges and resulting hearing was that he remained in lockdown for 35 days. It is well established that the imposition of extended lockdown does not constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that particular forms of process of the type described in Wolff were required. Sandin, 515 U.S. at 484; Madison, 104 F.3d at 768; Johnson v. Livingston, 360 F. App'x 531, 532 (5th Cir. 2010) (citing Malchi, 211 F.3d at 958); Hernandez, 522 F.3d at 563; Dixon, 117 F. App'x at 372.

13

In addition, the case law is clear that an inmate's allegation that a prison official asserted false <u>disciplinary</u> <u>charges</u> against him fails to state a claim under Section 1983 when the prisoner is afforded due process protection through a subsequent hearing. <u>Harris v. Smith</u>, 482 F. App'x 929, 930 (5th Cir. 2012) (quoting <u>Collins v. King</u>, 743 F.2d 248, 253-54 (5th Cir. 1984)); <u>accord</u> <u>Doolittle v. Holmes</u>, 306 F. App'x 133, 134 (5th Cir. 2009); <u>Moore v. Butler</u>, 211 F.3d 593, 2000 WL 329165, at *1 (5th Cir. Mar. 17, 2000).

On one hand, as to the jail disciplinary charges, although Harris testified that he was given only a limited opportunity to make a statement on his own behalf at the disciplinary hearing and alleged that he "was not given a fair hearing," his only penalty was a 35-day stay in disciplinary lockdown. As <u>Sandin</u> and its progeny make clear, Harris was not entitled to the full panoply of due process rights. Under these circumstances, plaintiff received adequate due process in connection with the jailhouse disciplinary charges against him. <u>Id.</u> (citing <u>Wolff</u>, 418 U.S. at 564-66). Harris therefore fails to state a claim for which he would be entitled to relief under Section 1983 as to his disciplinary proceedings.

On the other hand, Harris was found <u>not</u> guilty of the criminal charges against him. Thus, the Supreme Court's ruling in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), does <u>not</u> bar his claim that these criminal charges against him were false. The current record is insufficient to determine that his claim that the criminal charges against him were false

should be dismissed. Accordingly, further proceedings as to this claim against Banks concerning the criminal charge are required.

IV. SUPERVISORY LIABILITY

Harris makes no claim that defendant Sheriff Normand was personally involved in any of the alleged acts or omissions upon which his claims are based. "There is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corr. Corp. of Am. Inc., 364 F. App'x 927, 929 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006). Thus, Sheriff Normand cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in their employ or under their supervision. Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold Sheriff Normand liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the Sheriff] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391 ; Kohler, 470 F.3d at 1115.

15

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Tex. Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which Sheriff Normand can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983. Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

To hold a supervisory official liable for the acts of a subordinate, Harris must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir. 1998). "Deliberate indifference in this context ordinarily requires a pattern of similar constitutional violations by untrained employees . . . ." Pierce v. Hearne Indep. Sch. Dist., 600 F. App'x 194, 199 (5th Cir. 2015) (quotation omitted) (citing Connick v. Thompson, 563 U.S. 51, 62 (2011); Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003)). In the instant action, plaintiff has failed to establish any of the foregoing essential elements of such a supervisory claim under Section 1983 or that the Sheriff was

16

personally involved in any acts causing the deprivation of his constitutional rights. Accordingly, the complaint against Sheriff Normand must be dismissed.

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint against Sheriff Newell Normand and his claim against Deputy Banks concerning false <u>prison disciplinary</u> charges be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

**IT IS FURTHER RECOMMENDED** that further proceedings are required as to the remaining claims against defendant Jody Banks, because plaintiff's complaint asserts cognizable claims under Section 1983 of excessive force and false <u>criminal</u> charges against Deputy Banks.

A jury trial has been demanded. Record Doc. No. 16. Accordingly, **IT IS FURTHER RECOMMENDED** that the assigned magistrate judge be directed to conduct further proceedings to determine (a) if counsel should be appointed from this court's Civil Pro Bono Panel to represent plaintiff in this matter, and (b) if all parties consent to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this \_\_\_21st\_\_\_ day of June, 2017.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.